In re Charles Frank HUGHES, Jr.,

In re Deonnia Jane BAXTER,

In re Maggie Jean WRIGHT,

In re Roy MASON,

In re Mary Jane HARTLEY,

In re Peggy Jane PENDERGRASS,

In re Mary Catherine K. BRADFORD,

In re John E. DAWSON,

In re James R. JIRLES,

In re William H. CHADWICK, Sr.,

In re John Alvin KITTLE, Jr., Debtors.

Bankruptcy Nos. 1–79–01481, 1–79–01863, 1–80–00090, 1–80–01243, 1–80–00651, 1–80–00671, 1–80–00822, 1–80–00850, 1–80–00853, 1–80–01237 and 1–80–01247.

United States Bankruptcy Court, E. D. Tennessee.

Dec. 18, 1980.

Lawrence R. Ahern, III, Chattanooga, Tenn., for the trustee.

John C. Littleton, Chattanooga, Tenn., Asst. U. S. Atty., for the Social Security Administration.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The debtor in each of these cases filed a petition under Chapter 13 of the Bankruptcy Code. 11 U.S.C. (1979). The debtors proposed to make payments into their Chapter 13 plans from benefits payable to them under Subchapter II of the Social Security Act, 42 U.S.C. §§ 401–431. The questions in these cases are (1) whether such benefits can be used in a Chapter 13 plan and (2) whether the court can order the Social Security Administration to pay the benefits directly to the Chapter 13 trustee.

The questions arise as a result of the enactment of the Bankruptcy Code. It was the major part of the Bankruptcy Reform Act of 1978. Pub.L. No. 95–598, 92 Stat. 2549–2688 (1978). In his opinion dealing with these same questions, District Judge Wiseman reviewed the legislative history of Chapter 13. *In re Buren*, 6 B.R. 744 (Bkrtcy.M.D.Tenn.1980) *affirming* 4 B.R. 109, 6 B.C.D. 828, 2 C.B.C.2d 380 (Bkrtcy.M. D.Tenn.1980) (J. Jennings).

The following is a lengthy quotation from that opinion:

Chapter 13 of the Bankruptcy Reform Act is not limited to wage earner plans; it is entitled "Adjustment of Debts of an Individual with Regular Income." The class of persons to whom Chapter 13 is available has been dramatically expanded. The practice under old Chapter 13 did not live up to the basic purpose of permitting "an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee under bankruptcy court protection." S.Rep.No.95–989, 95th Cong., 2d Sess. 12, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5798. The problem with the old law was that it was limited to wage earners. According to the Senate report, one of the five aspects of the old law that caused it to be "basically and seriously defective" was that "it [did] not permit some individuals with regular income to qualify, such as small business owners or *social welfare program recipients*, because their principal incomes do not come from wages, salary, or commissions." *Id.* at 13 (emphasis added). The purpose of the new Chapter 13 was to solve these problems. "The new Chapter 13 will permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances." *Id.*

An "individual with regular income" for purposes of the Bankruptcy Code is an "individual whose income is sufficiently stable and regular to enable such individual to make payments under [a Chapter 13] plan." 11 U.S.C. § 101(24). Both the House and Senate committee reports analyzed this provision as applying to social security recipients. "[I]ndividuals on welfare, *social security*, fixed pension incomes, or who live on investment incomes, will be able to work out repayment plans with their creditors rather than being forced into straight bankruptcy." S.Rep.No.95–989, *supra*, at 24 (em-

phasis added); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 312, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6289 (emphasis added).

Obviously, the thrust of the Chapter 13 revision was to make its provisions available to a range of persons wider than the prior law. Expansion of the class to whom Chapter 13 is available comports with the basic legislative goal: to encourage financially overextended individual debtors to make greater use of voluntary repayment plans and thereby improve debtor relief, by allowing ratable distribution of future income without necessarily liquidating their non-exempt assets, and creditor recovery, by guaranteeing repayment of most, if not all, of the claims over an extended period. H.R. Rep.No.95–595, 95th Cong., 1st Sess. 116–120. *See* 5 Collier on Bankruptcy ¶ 1300.-02, at 1300–19—1300–21 (15th ed. 1980). The clear purpose and intent of Congress was that social welfare recipients should not be denied the benefits of Chapter 13 plans.

## I.

■ Consistent with that purpose, Congress broadly defined property of the bankruptcy estate. In Chapter 13, property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case and acquired thereafter until the case is closed, dismissed, or converted to a case under another chapter. 11 U.S.C. §§ 541(a) & 1306(a) (1979). The definition is certainly broad enough to include the debtors' social security benefits in their bankruptcy estates.

The Social Security Administration relies on an older statute as preventing social security benefits from becoming part of the estate. The protective statute is § 207 of the Social Security Act, 42 U.S.C. § 407. It provides:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

The protective statute is obviously in three parts. The first part applies only to the right to future payments and prevents transfer of it by the insured. The first part could not prevent the benefits from becoming part of the estate because of § 541(c)(1)(A) of the Bankruptcy Code. It provides that the property described in § 541(a) becomes part of the estate notwithstanding any provision that restricts or conditions transfer by the debtor. 11 U.S.C. § 541 (1979).

The second and third parts of the protective statute cover a broader range of benefits and rights. The second part, however, protects them only from legal process. Whether they become part of the estate does not depend on whether they can be reached by legal process. Compare § 541(a) of the Code and § 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 541(a) (1979) & 11 U.S.C. § 110(a)(5) (1976). See 4 Collier on Bankruptcy ¶ 541.02[1] (15th ed. 1979).

The third part of the protective statute presents the real statutory conflict. Congress apparently named bankruptcy and insolvency laws because the transfer effected by them may be by operation of law, rather than voluntary (by assignment) or involuntary (by legal process). See § 70(a) of the Bankruptcy Act, 11 U.S.C. § 70(a) (1976).[1] The third part of the protective statute must have been meant to keep the benefits out of bankruptcy.

Contrary to the administration's argument, the court must hold that for the purposes of Chapter 13 this part of the protective statute was implicitly repealed. The administration relies primarily on *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). See also *United States v. United Continental Tuna Corp.*,

1. Under § 541 of the Bankruptcy Code there is no transfer to the trustee. See 11 U.S.C. §§ 541(a) § 323(a) (1979); 4 Collier on Bankruptcy ¶ 541.02[2] (15th ed. 1979).

425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976). The court in *Morton v. Mancari* stated the general rule that repeals by implication are not favored and will be found only where legislative intent is clear. The court then explained how the facts showed that Congress did not intend to affect the earlier statute. The facts were far different from the facts in this case.

In *Morton v. Mancari* provisions of the later statute showed that it was not intended to repeal the earlier one. After enactment of the later statute, other statutes were enacted that showed Congress' intent not to affect the earlier statute. There was nothing in the legislative history that showed an intent to repeal the earlier statute.

The facts in this case are much different.

The legislative history shows clearly that Congress intended to make welfare benefits, including social security benefits, subject to Chapter 13. See quote above, pp. 792–793.

Section 1325(b) of Chapter 13 reinforces the conclusion that Congress meant for government benefits, not just government wages, to be subject to Chapter 13. That section provides that the bankruptcy court may order *any* department, agency, or instrumentality of the United States to deduct from the debtor's income and pay it to the Chapter 13 trustee. 11 U.S.C. §§ 101(14), 101(21), 1325(b) (1979).

Under the Bankruptcy Code, property which may be exempted becomes property of the estate. 11 U.S.C. §§ 522(b) & 541(a) (1979). See also S.Rep.No.95–989, 95th Cong., 2d Sess. 76–77, 82 (1978); H.R.Rep. No.95–595, 95th Cong., 1st Sess. 360, 368 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; 4 Collier on Bankruptcy ¶ 541.02[3] (15th ed. 1979). In the federal exemptions Congress included an exemption of the debtor's right to receive social security benefits. 11 U.S.C. § 522(d)(10)(A) (1979). If the protective statute prevented the benefits in question from becoming part of the estate, there would have been no need for the exemption.

Furthermore, the protective statute and Chapter 13 are not entirely at cross purposes. The protective statute was meant to preserve the Subchapter II benefits for their intended use in avoiding the harsh results of loss of earning power. A beneficiary may feel that he is best protected by using the benefits in a Chapter 13 for protection from his creditors. The benefits can be made subject to Chapter 13 only by the beneficiary's voluntarily commencing and continuing a Chapter 13 case. There cannot be an involuntary Chapter 13 case. 11 U.S.C. §§ 303(a), 706(c), 1112(d), & 1307(b) (1979). The debtor is allowed to exempt his right to receive social security benefits in those states where the federal exemptions apply. Also, the court must protect debtors from hardship that might result from a proposed Chapter 13 plan that does not allow them sufficient income after payments to the trustee. 11 U.S.C. § 1325(a)(6) (1979). See cases cited below, p. 14.

The court must also note that when Congress enacted the protective statute (in 1935) there were no provisions in the bankruptcy law like Chapter 13. Its predecessor was enacted after the protective statute, though the procedure had theretofore developed in Birmingham, Alabama. W. Phillips, Adjustment of Debts of an Individual with Regular Income 23 (1979). The administration has not pointed to any substantive changes in the protective statute since its original enactment. Statutes, of course, are generally meant to have prospective application, but at the time the protective statute was enacted Congress could not have had in mind a procedure like Chapter 13 as part of the bankruptcy law.

The administration also points out that when it passed the Bankruptcy Reform Act, Congress amended many other federal statutes, including the Social Security Act,[2] but did not repeal or amend the section in question. That adds some, but little, to the administration's argument. The absence of an explicit amendment is the reason why

---

2. 42 U.S.C. § 656(b).

there is a question of implicit repeal. The rule that the legislature is deemed to know what the law is does not mean that all repeals must be explicit. Moreover, the administration has not pointed to any amendments to other statutes like the one in question, though according to the legislative history, Congress intended to make Chapter 13 available to individuals with regular income from almost any source.

The court must reject the administration's argument. It depends on an over-extension of the rule as to implicit repeals and other rules of statutory construction. The purpose of rules of construction is to determine the intent of the legislature, not to circumvent it. The language of the Bankruptcy Code is unambiguous and clearly broad enough to include social security benefits in the bankruptcy estate in a Chapter 13 case. The legislative history indicates that was the intent of Congress. A rule of statutory construction must yield to the clearly expressed intent of the legislature. *Wilkinson v. Leland*, 27 U.S. (2 Pet.) 627, 7 L.Ed. 542 (1829); *Brown v. Barry*, 3 U.S. (3 Dal.) 365, 1 L.Ed. 638 (1797). As the court in *Minnesota v. Keeley* pointed out:

A purely legalistic focus, derived from artificial canons of construction, ought not, to be allowed to blot out a patent remedial intent, if there is no abortive violence to the language which Congress has used.

126 F.2d 863, 865 (8th Cir. 1942). See also *United States v. Jordan*, 109 F.Supp. 528 (D.D.C.1953) *aff'd* 207 F.2d 28 (D.C.Cir. 1953).

## II.

The second question is whether the court can order the administration to pay benefits directly to the trustee. The trustee relies on § 1325(b) of Chapter 13. 11 U.S.C. § 1325(b) (1979). That section provides that after confirmation of the Chapter 13 plan, the court may order any "entity" from which the debtor receives income to pay it or part of it to the trustee. "Entity" includes any department, agency, or instrumentality of the United States. 11 U.S.C. § 101(14) (entity) & § 101(21) (governmental unit) (1979).

The administration does not deny that it is an agency, department, or instrumentality of the United States. Nor does it deny that the benefits are income of the debtors. Its arguments against the clear statement of § 1325(b) are based on sovereign immunity, administrative integrity, and another provision of the Social Security Act.

### Sovereign Immunity

The administration argues that nothing in the Bankruptcy Code specifically waives its sovereign immunity so that an order under § 1325(b) is enforceable against it. The court must doubt the seriousness of the administration's argument on this point.

The major committee report from the Senate flatly states that *any* governmental unit is subject to an order under § 1325(b). S.Rep.No.95–989, 95 Cong., 2d Sess. 142 (1978). Only by obtuseness can the administration avoid the conclusion that § 1325(b) was meant to overrule *United States v. Krakover*, 377 F.2d 104 (10th Cir. 1967) *cert. den.* 389 U.S. 845, 88 S.Ct. 97, 19 L.Ed.2d 112 (1967).

That case involved a similar provision in chapter 13's predecessor, Chapter XIII of the Bankruptcy *Act*. The court held that sovereign immunity prevented enforcement against the United States of an order to pay the debtor's wages to the Chapter XIII trustee. The provision of the Bankruptcy Act provided only that the court could issue such an order to "any employer". The court reasoned that "any employer" was not specific enough to waive sovereign immunity. Of course, it is not as specific as "any department, agency, or instrumentality of the United States", which is what § 1325(b) says. It is against reason to say that Congress included governmental units in § 1325(b) so that the bankruptcy courts could issue unenforceable orders to them.[3]

---

**3.** "[T]he legislature is not to be presumed to have done a vain thing in the enactment of a statute." 73 Am.Jur.2d, Statutes § 249 at 422 (1974).

796

The court can imagine a statute that would more specifically include the Social Security Administration. But in order to waive sovereign immunity, Congress is not required to name the legions of governmental units for which it intends the waiver.

■ Likewise, Congress is not required to use the magic words "sovereign immunity" in a statute waiving it. The administration points out that § 106 is the only provision of the Bankruptcy Code that specifically deals with sovereign immunity. The trustee's brief correctly points out that § 106(c) preserves or effects the waiver intended by § 1325(b). Section 106(c) says:

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such provision binds governmental units.

To understand subsection (c) it is necessary to know that subsections (a) and (b) provide for a limited waiver of sovereign immunity by a governmental unit that has a claim against the bankruptcy estate. Without subsection (c) any waiver found elsewhere in the code might be defeated by negative inference from subsections (a) and (b).[4] Subsection (c) poses no danger that the courts will indiscriminately find waivers of sovereign immunity in other provisions of the code. It does not stretch the rules as to when a waiver will be found and how it will be construed. See *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *United States v. United States Fidelity and Guaranty*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940).[5] Fur-thermore, the Bankruptcy Code is a comprehensive statute. A waiver of sovereign immunity will be found only where it logically fits into the pattern of rights and liabilities under the code.

The waiver of sovereign immunity naturally follows from Congress' inclusion of social security benefits in Chapter 13 estates and its use in § 1325(b) of a definition including governmental units. The court rejects the administration's argument.

*Section 205 of the Social Security Act*

Subsection (j) and the regulations allow the administration to pay subchapter II benefits to a representative payee certified as such by the Secretary. 42 U.S.C. § 405(j); 20 C.F.R. §§ 404.1601–404.1610. The Secretary must find that it will serve the beneficiary's interest to pay the benefits to the representative payee.

What this provision and the regulations do is limit the administration's right to pay the benefits to someone other than the beneficiary. Section 1325(b), however, also gives the bankruptcy courts the power to order the administration to pay the benefits elsewhere. There is no direct conflict between these provisions.

■ The court must point out that it is required to protect Chapter 13 debtors from hardship. For confirmation of a plan, the court must find that the debtor will be able to make the payments and to comply with the plan. 11 U.S.C. § 1325(a)(6) (1979). The courts have recognized that a debtor cannot satisfy this standard if income after payments to the trustee is not enough to maintain him or his family. *In re Washington*, 6 B.R. 226, 6 B.C.D. 1094 (Bkrtcy.E.D.Va.1980); *In re Lucas*, 3 B.R. 252, 6 B.C.D. 82, 1 C.B.C.2d 833 (Bkrtcy.S.D.Calif. 1980); *In re Hockaday*, 3 B.R. 254, 6 B.C.D. 67, 1 C.B.C.2d 933 (Bkrtcy.S.D.Calif.1980); *In re Beaver*, 2 B.R. 337, 5 B.C.D. 1285 (Bkrtcy.S.D.Calif.1980). Furthermore, as

4. "This provision [subsection (c)] was included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective." 2 Collier on Bankruptcy ' 106.01 at 106–3 (15th ed. 1979).

5. Typically the question is whether a particular cause of action is included in a waiver.

the court said above, there can be no involuntary Chapter 13 cases. Social security benefits can be brought into a Chapter 13 estate only by the debtor's voluntary commencement and continuance of a Chapter 13 case.

### Administrative Integrity

The administration also argues that compliance with income deduction orders would disrupt the statutory scheme of the Social Security Act. The administration points out only two possible problems.

First, it is the administration's responsibility to determine the amount of benefits to be paid to an individual. And second, when there has been an overpayment, the Secretary is required to recover overpayments by adjustments (reductions) in benefit rates—perhaps even to zero.

The administration's concern is unjustified. It shows a lack of understanding of Chapter 13. In a typical wage-earner case, the Chapter 13 trustee intrudes on the employer's rights only to the extent of enforcing the wage deduction order. The employer may change the debtor's terms of employment, may lay-off the debtor, or may even fire him. The employer will encounter trouble with the trustee or debtor only if its action is taken primarily to avoid compliance with the deduction order. The administration is in essentially the same position as an employer. The trustee has only a limited interest in the benefits paid and the rate.

The problem of recovery of overpayments may be more difficult. The character of a debt for overpayments is not clear. Nor is it clear to what extent the trustee or debtor might contest the administration's right to reduce payments to recover an overpayment. In any event, the problem at the moment is conjectural. The administration cannot escape § 1325(b) because in other cases it may have to litigate these questions or may have to adopt new procedures. Moreover, the court must conclude that

having waived sovereign immunity to the extent of allowing income deduction orders, Congress resolved this argument against the administration. See *Federal Housing Administration v. Burr*, above.

### Conclusion

The Bankruptcy Reform Act of 1978 was not a creature that suddenly invaded the administration's domain. The process of reform led to the creation in 1970 of the Commission on Bankruptcy Laws of the United States. The Commission issued its report in 1973. H.R.Doc. No. 93–197, 93d Cong., 1st Sess. (1973). It recommended that recipients of retirement benefits, welfare payments, or any similar source of income be made eligible for relief under the successor to Chapter XIII. Report, Part I at 164–165. The court believes that in passing the Bankruptcy Reform Act, Congress meant to implement that recommendation in Chapter 13. It is unclear why Congress did not amend the social security provision in question. It may have been oversight. Or Congress may have thought that the provisions of the new bankruptcy law were sufficient to overrule any provisions like the one in question. In any event, the legislative history is clear. Congress meant for welfare recipients, including social security beneficiaries, to be able to use Chapter 13.

It is also clear that Congress recognized the necessity for income deduction orders. It gave the courts the power to order any entity to pay the debtor's income to the trustee. This court is aware of the necessity. It has confirmed approximately 10,000 cases under both Chapters XIII and 13. The court has knowledge of the success rate where there is not a deduction order. Furthermore, without deduction orders the Chapter 13 trustee could not properly perform his duties. In the coming year the Chapter 13 trustee should receive and disburse more than $4,000,000. That will involve thousands of receipts from several thousand debtors and thousands of disbursements to many more creditors. In-

come deduction orders are necessary to the orderly performance of the trustee's duties.

Deduction orders are also convenient for debtors. The court is particularly concerned that without deduction orders social security beneficiaries in Chapter 13 cases would have the burden of making payments to the trustee. In many cases social security beneficiaries are old or disabled—and poor. They have no convenient means of making payments to the trustee. The added burden of making payments can easily lead to failure to make them and consequent dismissal of the Chapter 13 case, thereby subjecting the debtor to the hardships and harassment which the Chapter 13 case was intended to avoid. Congress no doubt realized this when it made *any governmental unit* subject to income deduction orders. The Social Security Administration should be singled out as a governmental unit for which deduction orders are especially appropriate.

In conclusion, the court finds that Congress intended for Chapter 13 relief to be available to the recipients of social security benefits. Orderly and efficient operation of a Chapter 13 program requires the issuance of income deduction orders. They are the key to successful administration of a Chapter 13 program.

Having answered both questions against the Social Security Administration, the court will enter the appropriate orders.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.