JAMES C. HILL, Circuit Judge:
 

 The sole issue raised by this appeal is whether the Social Security Administration is subject to bankruptcy court income deduction orders that require payment of all or some portion of the debtor’s social security benefits to a trustee in bankruptcy. We hold that the Social Security Administration is required to comply with such orders.
 

 This is a consolidated appeal of ten cases in which individuals filed voluntary petitions for relief under Chapter 13 of the Bankruptcy Code. 11 U.S.C. § 1301,
 
 et seq.
 
 All of the individuals involved receive social security benefits either under Title II of the Social Security Act, 42 U.S.C. § 401,
 
 et seq.,
 
 which provides benefits for retirement and disability, or under Title XYI of the Act, 42 U.S.C. § 1381,
 
 et seq.,
 
 which provides supplemental security income. As part of their Chapter 13 plans, each debtor listed social
 
 *1515
 
 security benefits as regular income, and in each instance the bankruptcy court issued an income deduction order to the Social Security Administration, requiring that a portion of each debtor’s benefits be sent directly to the Chapter 13 trustee. The Social Security Administration appealed the orders to the district court, arguing that they violated the provisions of the Social Security Act that specifically exempt benefits paid under Titles II and XVI from the “operation of any bankruptcy or insolvency law.” 42 U.S.C. §§ 407, 1383(d)(1). The district court, however, affirmed each of the orders relying primarily on the reasoning of the bankruptcy court and the decision of
 
 In re Buren,
 
 4 B.R. 109 (Bkrtcy.M.D.Tenn.), aff
 
 ’d,
 
 6 B.R. 744 (D.M.D.Tenn.1980), involving the identical issue.
 
 [1]
 

 Known as the “anti-assignment” provision, section 207 of the Social Security Act, 42 U.S.C. § 407 provides:
 

 The right of any person to any future payment [of Social Security benefits] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 

 However, section 1325(b) of the Bankruptcy Reform Act of 1978 states that upon confirmation of a debtor’s plan, “... the court may order any entity from whom the debt- or receives income to pay all or any part of such income to the trustee.” 11 U.S.C. § 1325(b). Moreover, the Bankruptcy Code’s definition of “entity” makes clear that the provision for income deductions applies to government agencies such as the Social Security Administration.
 
 [2]
 
 The conflict is therefore apparent. The Social Security Act’s anti-assignment provision purports to prohibit the assignment of social security benefits, with very limited exceptions,
 
 [3]
 
 while the Bankruptcy Code purports to authorize direct income deductions from the Social Security Administration. Upon review, we conclude that the provision of the later-enacted Bankruptcy Reform Act must prevail over the more general anti-assignment provision of the Social Security Act.
 

 The purpose of a Chapter 13 plan is “to permit an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee under bankruptcy court protection, with the trustee fairly distributing the funds deposited to creditors until all debts have been paid.” S.Rep. No. 95-989, 95th Cong., 2d Sess. 12,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5798. Under the original Bankruptcy Act, Chapter 13 plans were restricted to wage earners. Thus, one of the primary defects of the old law was that “it [did] not permit some individuals with regular income to qualify, such as small business owners or social welfare recipients, because their principal incomes do not come from wages, salary, or commissions.”
 
 Id.
 
 at 13, 1978 U.S. Code Cong. & Ad.News at 5799. To remedy this defect, Congress modified the code so that any “individual with regular income” could file a voluntary petition for relief under Chapter 13. 11 U.S.C. § 109(e). The legislative history of the Bankruptcy Reform Act clearly indicates that the purpose
 
 *1516
 
 of this modification was to “permit almost any individual with regular income to propose and to have approved a reasonable plan for debt repayment based on that individual’s exact circumstances.” S.Rep. No. 95-989, at 13, 1978 U.S.Code Cong. & Ad. News at 5799. Moreover, “[ejven individuals whose primary income is from investments, pensions, social
 
 security
 
 or welfare may use chapter 13 if their income is sufficiently stable and regular.” H.Rep. No. 95-595, 95th Cong., 1st Sess. 119,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6080 (emphasis supplied).
 
 [4]
 

 Because it is evident that Congress anticipated social security recipients could use Chapter 13, it follows that social security benefits are properly included in the debtor’s Chapter 13 estate, which is defined as “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). Any doubt that social security benefits are included in the estate, and are therefore subject to income deduction orders, is eliminated by the provision of the Bankruptcy Reform Act that expressly allows the debtor to exempt social security benefits from the estate, 11 U.S.C. § 522(d)(10)(A). Section 522 states in relevant part:
 

 (d) the following property may be exempted [from the debtor’s estate] under subsection (b)(1) of this section: ...
 

 (19) the debtor’s right to receive—
 

 (a) a social security benefit, unemployment compensation, or local public assistance benefit.
 

 This exemption would be meaningless had Congress not intended social security benefits to be estate property in the first instance.
 
 In re Buren,
 
 6 B.R. at 747.
 

 The Social Security Administration nevertheless maintains that the voluntariness of a Chapter 13 plan, and the debtor’s ability to exempt social security benefits, are irrelevant in determining whether the Administration must comply with income deduction orders because the Social Security Act’s anti-assignment provision (section 407) precludes even voluntary assignments. In support of this position, the Administration cites
 
 Philpott v. Essex County Welfare Board,
 
 409 U.S. 413,93 S.Ct. 590, 34 L.Ed.2d 608 (1973). In
 
 Philpott,
 
 the Supreme Court held that the “all-inclusive” language of section 407 precluded the state from reaching social security disability benefits even though the beneficiary had agreed to the assignment to reimburse the state for public assistance he had received. Initially,
 
 Philpott
 
 is distinguishable because the instant case involves a later-enacted statute which manifests a clear congressional intent to modify restrictions on the transfer of benefits.
 
 In re Buren,
 
 6 B.R. at 747. Moreover, despite the “all-inclusive” language of section 407, we have on two recent occasions rejected application of the statute “where the statutory objective of preserving essential resources for the debtor could not have been effectuated.”
 
 In re Treadwell,
 
 699 F.2d 1050, 1053 (11th Cir.1983);
 
 see also Department of Health and Rehabilitative Services, Florida v. Davis,
 
 616 F.2d 828 (5th Cir.1980).
 

 By insulating social security benefits from assignment or seizure, section 407 attempts to insure that recipients have the
 
 *1517
 
 resources necessary to meet their most basic needs. H.R.Rep. No. 92-213, 92d Cong., 1st Sess. 156 (1971);
 
 In re Treadwell,
 
 699 F.2d at 1053;
 
 see Department of Health and Rehabilitative Services,
 
 616 F.2d at 831. Thus, when the assignment has the effect of denying the debtor basic resources, section 407 is properly invoked.
 
 E.g., Philpott v. Essex County Welfare Board,
 
 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973). However, when the debtor’s ability to care for himself or herself is not implicated, section 407 need not be applied.
 
 E.g., In re Treadwell,
 
 699 F.2d 1050 (11th Cir.1983) (debtor fraudulently conveyed benefits to his daughter for no consideration);
 
 Department of Health and Rehabilitative Services, Florida v. Davis,
 
 616 F.2d 828 (5th Cir.1980) (incompetent debtor, living in a state-run facility, could not use benefits to support himself).
 

 In the present case, the assignment of funds to the trustee will not affect the recipients ability to secure basic care and maintenance. As one bankruptcy judge has explained:
 

 A debtor in a Chapter 13 case who chooses to provide for repayment of his debts from his Social Security benefits is unlike an ordinary assignor in several respects. First, the plan of debt adjustment must be reviewed and approved by a United States Bankruptcy Judge. In approving the plan, the Court must determine that the debtor will be able to make all payments under the plan and to comply with the plan. 11 U.S.C. § 1325(a)(6). The Court will not approve a plan unless it is clear that the debtor will be able to make these payments, thus perhaps enabling him to retain property which would otherwise be subject to the claims of creditors. Unless the Court has first ascertained that the plan of repayment is feasible and will work no undue hardship on the debtor or his dependents, the plan cannot be confirmed. Second, and perhaps more importantly, Chapter 13 is a wholly voluntary proceeding. A debtor cannot be forced to submit his Social Security benefits to the jurisdiction of the Court. See 11 U.S.C. §§ 303(a), 706(c), 1112(d). Moreover, a debtor under Chapter 13 has a non-waivable right to dismiss his case under Chapter 13. For this reason the debtor’s benefits may not be subject to seizure in any legal process against the debtor unless and except to the extent that he so desires.
 

 In re Penland,
 
 11 B.R. 522, 4 C.B.C.2d 969, 972 (Bkrtcy.N.D.Ga.1981). In addition to the protections afforded by the bankruptcy process, the Administration acknowledges that upon receipt of benefits a recipient could turn the money over to the Chapter 13 trustee. The only issue therefore is whether the Social Security Administration can be forced to comply with income deduction orders in the same manner as employers and other government entities. Because the Administration would like to avoid the administrative burden of compliance, it seeks to invoke the anti-assignment provision for its own benefit and not for the benefit or protection of the debtor social security recipients. Indeed, it stretches credulity that the Administration could protect the best interest of recipients by denying them the opportunity to use Chapter 13, an opportunity Congress clearly intended would be available.
 
 [5]
 
 Hence, the Administration’s reliance on
 
 Philpott
 
 is unpersuasive.
 

 The Administration’s most plausible argument is that the new Bankruptcy Code did not expressly repeal the anti-assignment provisions of the Social Security Act. Title III of the Bankruptcy Reform Act deals exclusively with “amendments to other statutes,” and contains various modifications of miscellaneous statutes necessary to effectuate the new Act. Title III, however, makes no mention of the anti-assignment provision. Because there is no express re
 
 *1518
 
 peal of the anti-assignment provision, and because of the Supreme Court’s adversión to the doctrine of repeal by implication,
 
 [6]
 
 the Administration urges that the anti-assignment provision remains in full force and effect.
 

 Although we acknowledge that repeal by implication generally is disfavored, there are
 

 “two well-settled categories of repeals by implication — (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest. . .. ”
 

 Radzanower v. Touche Ross & Co.,
 
 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (quoting
 
 Posadas v. National City Bank,
 
 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)); see
 
 also Morton v. Mancan,
 
 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). Because the legislative history of Title III suggests that its amendments were not intended to be exclusive,
 
 [7]
 
 Title III does not preclude a finding of an implied modification of the anti-assignment provision. Moreover, the conflict between the Bankruptcy Code and the Social Security Act is apparent and cannot be reconciled without limiting one to accomo-date the other.
 
 [8]
 
 We therefore find that the Bankruptcy Code must be construed to limit the anti-assignment provision of the Social Security Act when the debtor voluntarily submits a Chapter 13 plan.
 

 That Congress intended such a limitation can be inferred from the Bankruptcy Code itself. Section 541 defines property of the estate, which we already have determined includes social security benefits. Section 541 states further:
 

 (c)(1) Except as provided in paragraph (2) of this subsection [dealing with spendthrift trusts] an interest of the debtor in property becomes property of the estate ... notwithstanding any provision—
 

 (A) that restricts or conditions transfer of such interest by the debtor
 

 11 U.S.C. § 541(c)(1)(A). This provision manifests Congress’ intent that restrictions on transfer of property to the estate, such as the anti-assignment restriction on social security benefits, would not preclude the operation of a Chapter 13 plan.
 

 Congress’ intention also is manifested in its expansion of the class of individuals eligible to invoke Chapter 13 to include social security recipients. A narrow implied limitation of section 407 appears to be the only way to effectuate the operation of a Chapter 13 plan for an individual whose regular income consists of social security benefits. At the same time, such a limitation does not contravene the purpose of section 407 since the ultimate welfare of the recipient is insured by Chapter 13 proce
 
 *1519
 
 dures. Social security benefits remain insulated from creditor claims and attachments except to the extent that the recipient voluntarily submits them to Chapter 13 trustee. For these reasons the order of the district court is
 

 AFFIRMED.
 

 [1]
 

 .
 
 In re Buren,
 
 was argued before the Sixth Circuit in October, 1981 (No. 80-5427), but remains pending as of this writing.
 

 [2]
 

 . The term “entity” as it is used in 11 U.S.C. § 1325(b) is defined as follows: “. .. ‘entity’ includes person, estate, trust, governmental unit.” 11 U.S.C. § 101(14). The term “governmental unit” in turn is defined to include "... department, agency, or instrumentality of the United States_” 11 U.S.C. § 101(21).
 

 [3]
 

 . The Social Security Act specifies two situations in which the Secretary of Health and Human Services may transmit Title II benefits to third parties. Section 205(j) of the Act authorizes the Secretary to certify a representative payee “[w]hen it appears ... that the interest of an applicant entitled to a payment would be served thereby.” 42 U.S.C. § 405(j). The certified representative must then accept the payments for the “use and benefit” of the applicant.
 
 Id.
 
 In addition, section 206 of the Act permits the Secretary to transmit a portion of a claimant’s past-due benefits to the attorney who successfully represented the claimant before the agency and in court. 42 U.S.C. § 406.
 

 [4]
 

 . The Administration maintains that this legislative history is not dispositive because Congressional Committee reports cannot be construed to override the express terms of another statute.
 
 See, e.g., TVA v. Hill,
 
 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). We agree that generally legislative history is an inadequate substitute for congressional action. Legislative oversights, however, often create an uncomfortable situation for the court asked to construe a statute consistent with “congressional intent,” as opposed to what actually appears on the face of the statute. Of course the best of all possible worlds is that in which legislators have the ability to foresee all potential conflicts. Unfortunately this is not always possible, and when an oversight is apparent, the court must struggle to devine Congress’ intent from an often misleading and inconsistent legislative history. Fortunately, this case does not present us with such a situation. As will become clear, the determination that social security recipients are eligible to use Chapter 13 is supported not only by the legislative history but also by the Bankruptcy Code itself.
 
 See
 
 11 U.S.C. § 522(d)(10)(A) (discussed
 
 infra).
 

 [5]
 

 . By voluntarily submitting benefits to a Chapter 13 trustee, the debtor is able to preserve other property which otherwise would be subject to the claims of creditors.
 
 In re Penland,
 
 11 B.R. 522, 4 C.B.C.2d at 972. Moreover, during the repayment period creditors may not harass the debtor. See
 
 generally,
 
 H.R.Rep. 95-595 at 118, 1978 U.S.Code Cong.
 
 &
 
 Ad.News at 6079.
 

 [6]
 

 .
 
 See United States v. Wills,
 
 449 U.S. 200, 221, 101 S.Ct. 471, 483, 66 L.Ed.2d 392 (1980);
 
 TVA v. Hill,
 
 437 U.S. 153, 189-90, 98 S.Ct. 2279, 2299-2300, 57 L.Ed.2d 117 (1978);
 
 Randzanower v. Touche Ross & Co.,
 
 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976);
 
 United States v. Continental Tuna Corp.,
 
 425 U.S. 164, 168-69, 96 S.Ct. 1319, 1322-1323, 47 L.Ed.2d 653 (1976);
 
 Morton v. Mancari,
 
 417 U.S. 535, 549-50, 94 S.Ct. 2474, 2482-2483, 41 L.Ed.2d 290 (1974).
 

 [7]
 

 . Title III focused on three particular problem areas: creditor preferences or priorities, exceptions to discharge, and various laws providing penalties in the event of discharge. H.R.Rep. No. 95-595 at 5-6, 285-86, 1978 U.S.Code Cong. & Ad.News at 5967, 6241-42.
 

 [8]
 

 .The Administration suggests that the two statutes may be reconciled by analogizing social security benefits to a spendthrift trust. The bankruptcy code specifically exempts income from spendthrift trusts from the debtor’s estate. 11 U.S.C. § 541(c)(2). Hence, the Administration asks that we construe the spendthrift trust exemption to allow it to protect needy citizens as effectively as individuals can shelter improvident relatives. As discussed above, however, there is no basis for this analogy in light of the fact that the benefits can be turned over to the trustee by the debtor, and the Administration’s acknowledgement that all that is at issue here is whether the Administration must perform the administrative function of forwarding benefits directly to the trustee.