**In re Deonnia Jane BAXTER.**

**Bankruptcy No. 1–79–01863.***

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 18, 1983.

See also, 7 B.R. 791.

Lawrence R. Ahern, III, Miller & Martin, Chattanooga, Tenn., for trustee.

C. Kenneth Still, John Littleton, Asst. U.S. Atty., Chattanooga, Tenn., for United States.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This court has previously held that the anti-assignment statute in the Social Security Act does not make a social security recipient ineligible for relief under Chapter 13 of the Bankruptcy Code and does not prevent the bankruptcy court from ordering the Social Security Administration (SSA) to send part of a recipient's benefits to the Chapter 13 trustee. *In re Hughes,* 7 B.R. 791, 7 B.C.D. 12 (Bkrtcy.E.D.Tenn.1980).

* In re Easter (Edward E.), Bankruptcy No. 1–80–01284; In re Grindstaff (Ray Mack), Bankruptcy No. 1–80–02321; In re Rogers (Alvin E.), Bankruptcy No. 1–81–00339; In re Lovingood (Pearlie), Bankruptcy No. 1–81–00601; In re Cole (James Walter), Bankruptcy No. 1–81–00814; In re Isaac (Thomas), Bankruptcy No. 1–81–00915; In re Chastain (Leona K.), Bankruptcy No. 1–81–00996; In re Wiseman (Thad W.), Bankruptcy No. 1–81–01164; In re Williams (Gussie Mae), Bankruptcy No. 1–81–01354; In re Holloway (Fred), Bankruptcy No. 1–81–01491; In re Dunigan (Pearley Mae), Bankruptcy No. 1–81–01507; In re Jackson (Louella), Bankruptcy No. 1–81–01574; In re Fair (Walter R., Sr.), Bankruptcy No. 1–81–01603; In re Perry (Jackie), Bankruptcy No. 1–81–01740; In re Vandygriff (Faye), Bankruptcy No. 1–81–01815; In re Jude (Betty Jean), Bankruptcy No. 1–81–01867; In re Pressnell (Henry C.), Bankruptcy No. 1–81–01938; In re Milsaps (Brenda), Bankruptcy No. 1–81–01990; In re Rhea (Princess), Bankruptcy No. 1–81–02010; In re Wood (Robert), Bankruptcy No. 1–81–02025; In re Motley (George

A.), Bankruptcy No. 1–82–00179; In re Rollins (Roberta N.), Bankruptcy No. 1–82–00222; In re Hooker (Luther and Ruth), Bankruptcy No. 1–82–00465; In re Trimble (Ronald C.), Bankruptcy No. 1–82–00664; In re Ford (Annie G.), Bankruptcy No. 1–82–00769; In re Gladden (Shaw), Bankruptcy No. 1–82–01742; In re Rippy (Walter T.), Bankruptcy No. 1–82–02262; In re Nance (Mary Kathryn), Bankruptcy No. 1–82–02334; In re Hampton (Lee Roy), Bankruptcy No. 1–82–02360; In re Butler (Nelson Andrew), Bankruptcy No. 1–82–02366; In re Jackson (James I.), Bankruptcy No. 1–83–00087; In re Appling (Hiwatha), Bankruptcy No. 1–83–00425; In re Hamilton (Mary), Bankruptcy No. 1–83–00481; In re Henegar (Norman), Bankruptcy No. 1–83–00606; In re Bass (Roy), Bankruptcy No. 1–83–01062; In re Kirk (Mary Kay), Bankruptcy No. 1–83–01067; In re Stoker (Ida Viola), Bankruptcy No. 1–83–01075; In re Pinkerton (Irene Louise), Bankruptcy No. 1–83–01078; In re Faust (Carolyn K.), Bankruptcy No. 1–83–01152 and In re Harwood (Albert), Bankruptcy No. 1–83–01302.

All the courts that have considered the question have agreed that the anti-assignment statute was "implicitly repealed" to the extent the Bankruptcy Code was intended to make social security recipients eligible for relief under Chapter 13. *United States v. Devall,* 704 F.2d 1513, 10 B.C.D. 815, 8 C.B.C.2d 663 (11th Cir.1983); *Toson v. U.S.,* 18 B.R. 371 (U.S.D.C.N.D.Ga.1982); *In re Buren,* 6 B.R. 744, 6 B.C.D. 1130 (U.S.D. C.M.D.Tenn.1980) aff'g 4 B.R. 109, 6 B.C.D. 828, 2 C.B.C.2d 380 (Bkrtcy.M.D.Tenn.1980); *Matter of Moore,* 17 B.R. 551 (Bkrtcy.M.D. Fla.1982); *In re Williams,* 13 B.R. 640 (Bkrtcy.D.Wash.1981); *In re Penland,* 11 B.R. 522, 4 C.B.C.2d 969 (Bkrtcy.N.D.Ga. 1981); *In re Bruins,* 8 B.R. 127 (Bkrtcy.D.R. I.1981); *In re Craig,* 15 B.R. 712, 5 C.B.C.2d 451 (Bkrtcy.W.D.N.C.1981).

The question is before the court again in light of a recent amendment to the anti-assignment statute. The amendment was intended to overrule the court decisions. The debtors in these cases contend that despite the amendment the anti-assignment statute cannot constitutionally deprive them of the right to use their social security benefits in their Chapter 13 cases.

Before the amendment, the anti-assignment statute read as follows:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407.

The amendment added the following subsection:

No other provision of law, enacted before, on or after the date of enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

The amendment was part of Pub.L. No. 98–21, which made numerous amendments to the social security and tax laws for the purpose of making the social security system financially sound.

The amendment's legislative history is short and to the point:

Based on the legislative history of the Bankruptcy Reform Act of 1978, some bankruptcy courts have considered social security and SSI benefits listed by the debtor to be income for the purposes of a Chapter XIII [sic] bankruptcy and have ordered SSA in several hundred cases to send all or part of a debtor's benefit check to the trustee in bankruptcy.

Your committee's bill specifically provides that social security and SSI benefits may not be assigned notwithstanding any other provisions of law including P.L. 95–598, the Bankruptcy Reform Act of 1978. This provision would be effective upon enactment.

H.R.Rep. No. 98–25, 98th Cong., 1st Sess. 82, 83 (1983), U.S.Code Cong. & Admin. News 1983, p. 143.

This legislative history suggests that a few misguided bankruptcy courts had held in favor of Chapter 13 over the anti-assignment statute on the basis of an unwarranted reading of Chapter 13's legislative history. This is far from the truth. The legislative history of Chapter 13 explicitly said that the new law would make social security recipients eligible for Chapter 13. S.Rep. No. 95–989, 95th Cong., 2d Sess. 24, (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 119 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Despite the strong policy against implicit repeal, all the courts agreed that Congress intended it. Finally, the bankruptcy statutes did not require a stretched interpretation to reach the conclusion that they implicitly repealed the anti-assignment statute for Chapter 13 purposes.

The legislative history of the recent amendment also says that the amendment "specifically provides" that social security benefits cannot be assigned despite the provisions of the Bankruptcy Code. Of course, the amendment does no such thing. A member of Congress who read only the

amendment could not know that it was intended to undo the provisions of the Bankruptcy Code that made social security recipients eligible for Chapter 13.

The amendment's legislative history is so incongruous as to be hardly worth considering. The amendment itself is little more than a written statement of the evidentiary rule that implicit repeals are not favored. Congress could certainly pass a later law that would override the anti-assignment statute without mentioning it specifically.

Nevertheless, the amendment and its legislative history show Congress's intent to make social security recipients ineligible for Chapter 13 relief. This result cannot be avoided by interpreting the amendment as a failed attempt to implicitly repeal provisions of the Bankruptcy Code. Likewise, reading the amendment as a written statement of the evidentiary rule against implicit repeals does not help as to a prior statute like the Bankruptcy Code. Thus, the court must rule on the constitutionality of the anti-assignment statute as applied to the debtors in these Chapter 13 cases. The statute specifically provides ". . . no moneys paid . . . shall be subject . . . to the operation of any bankruptcy or insolvency law."

The full effect of the anti-assignment statute would be to prevent social security benefits from becoming part of the bankruptcy estate. See 11 U.S.C. §§ 541 & 1306; *In re Hughes,* 7 B.R. 791, 793 7 B.C.D. 12, 13 (Bkcy.E.D.Tenn.1980). Though the benefits might be regular income in the general sense, the "regular income" that makes a debtor eligible for Chapter 13 must be part of the bankruptcy estate and subject to the court's and the trustee's control. 11 U.S.C. §§ 101(24), 109(e), 541, 1306 & 1322(a)(1). Even though a social security recipient can do as he pleases with benefits already in hand, the court could not order him to pay them to the Chapter 13 trustee since they are not part of the bankruptcy estate.

This effectively prevents the use of Chapter 13 by eliminating the means of compelling compliance with the plan. Chapter 13 is voluntary in the sense that only the debtor can commence or continue a case, but it is not so voluntary that the debtor can choose not to comply with the plan.

The result is that a debtor whose only income is social security benefits is not eligible for Chapter 13 relief because he lacks "regular income" within the meaning of the statute.

The anti-assignment statute generally prevents creditors from siphoning off the money before the benefit check reaches the debtor. The statute's main purpose is to assure that the debtor will receive money with which to pay for the basic necessities of life.

The anti-assignment statute was enacted in 1935, before there was a bankruptcy proceeding such as Chapter 13. The anti-assignment statute must have been intended to protect benefits due to debtors involved in other kinds of bankruptcy cases. The most common kind of case was a liquidation case. In a liquidation case, the bankruptcy trustee might have taken any periodic benefit payment due for a period before the debtor's bankruptcy, any money accumulated from benefits paid before the debtor's bankruptcy, and any lump sum award to which the debtor was entitled at the time of his bankruptcy. Bankruptcy Act § 70a; 11 U.S.C. § 110a (1976). This would obviously have defeated the purpose of the benefits, and therefore the anti-assignment statute was enacted to prevent the trustee from taking the benefits.

The courts have recognized that Chapter 13 does not conflict with the intent of the anti-assignment statute to assure that the debtor has money for basic needs. Since there is no conflict, why is the SSA opposed to the use of social security benefits in Chapter 13 cases? The SSA has consistently argued that it cannot bear the administrative burden of splitting payments between the debtor and the Chapter 13 trustee. The SSA certainly is not concerned with protecting debt-burdened social security beneficiaries.

Because the Administration would like to avoid the administrative burden of compliance, it seeks to invoke the anti-assignment provision for its own benefit and not for the benefit or protection of the debtor social security recipients. Indeed, it stretches credulity that the Administration could protect the best interest of recipients by denying them the opportunity to use chapter 13, an opportunity Congress clearly intended would be available. *United States v. Devall,* 704 F.2d 1513, 1517 (11th Cir.1983).

The legislative history suggests that the amendment was intended to protect social security recipients from the evils of Chapter 13, but to that extent the legislative history must be considered not only incongruous but also misleading. Thus, the amendment only shows an intent to free the SSA from the administrative burden of complying with Chapter 13 income deduction orders in "several hundred cases". H.R.Rep. no. 98–25, above.

Furthermore, the SSA does not find it too burdensome to honor garnishments for alimony and child support, even though this should involve essentially the same work as honoring income deduction orders in Chapter 13 cases.

The SSA has honored such garnishments on the basis of implicit repeal of the anti-assignment statute by 42 U.S.C. § 659.[1] Section 659 did not specifically refer to the anti-assignment statute. Indeed, § 659 did not appear to be an exception to the anti-assignment statute. It appeared to allow garnishment only of federal wages and federal benefits, such as military pensions, based on remuneration for *federal* employment.

The conclusion that § 659 created an exception to the anti-assignment statute had to rest primarily on its legislative history. It said that § 659 "would also override provisions in various social insurance or retirement statutes which prohibit attachment or garnishment." S.Rep. No. 93–1356, 93d Cong., 2d Sess. (1974) reprinted 1974 U.S. Code Cong. & Admin.News 8133, 8157. This statement was not entirely consistent with the rest of the legislative history.[2] In any event, Pub.L. No. 98–21 also amended § 659 by adding a reference to the anti-assignment statute. Pub.L. No. 98–21, § 335(b)(1), 97 Stat. 130 (1983). This will apparently allow the SSA to continue honoring garnishments for alimony and child support even though § 659 may not apply to most social security benefits.

The SSA appears to have simply disliked having to comply with income deduction orders in Chapter 13 cases while at the same time honoring alimony and child support garnishments on the basis of an implicit repeal and despite a similar administrative burden.

Pub.L. No. 98–21 also made social security benefits taxable. As a result, the SSA may be required to withhold income tax from benefits and will be required to do a great amount of accounting for tax purposes. 26 U.S.C. § 3402(*o*); see also Pub.L. No. 98–21, § 121(a) & (b), 97 Stat. 82 (1983), adding 26 U.S.C. § 6050F. For political reasons the SSA could not oppose these amendments on the ground that they would impose too great an administrative burden.

1. Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

2. The Committee bill would specifically provide that the wages of Federal employees ... would be subject to garnishment in support and alimony cases. In addition, annuities and other payments under Federal programs in which entitlement is based on employment would also be subject to attachment for support and alimony payments .... It would also override provisions in various social insurance or retirement statutes which prohibit attachment or garnishment.
S.Rep. No. 93–1356, 93d Cong., 2d Sess. (1974) reprinted 1974 U.S.Code Cong. & Admin.News 8133, 8157.

But these provisions still show the SSA's ability and willingness to shoulder an administrative burden must greater than compliance with income deduction orders in several hundred Chapter 13 cases.

The SSA is also willing to send benefit checks to banks for direct deposit to the beneficiaries' accounts. This helps disabled recipients who cannot go out to bank or to pay their bills. The SSA, however, preferred not to have the administrative burden of complying with income deduction orders for disabled social security recipients who want to use Chapter 13 to protect their property and their peace of mind from their creditors.

The Congressional Budget Office reported on the financial effect of the provisions that included the amendment to the anti-assignment statute.

> The provisions in this section of the bill [Title III of H.R. 1900] are mostly technical in nature, relating to changes to eliminate certain gender based discrimination to reflect recent court decisions, or to adjust certain accounting mechanisms. *Most have negligible revenue or outlays impact.*

H.R.Rep. No. 98–25, 98th Cong., 1st Sess. 176 (1983) (emphasis added), U.S.Code Cong. & Admin.News 1983, p. 394.

If freeing the SSA from the obligation of complying with Chapter 13 income deduction orders will save it only a negligible amount of money, the administrative burden imposed by such orders is either not very costly or not very heavy.

### Discussion

Among other arguments, the debtors contend that excluding them from relief under Chapter 13 would deny them equal protection of the laws under the Fifth Amendment to the United States Constitution.

A person who claims that he is being denied equal protection means that the statute in question treats him less favorably than other people in the same circumstances. Less favorable treatment does not mean that the statute denies equal protection. Government requires that some persons be treated differently from others. The courts weigh the interest that the statute impinges upon against the legitimate reasons for the less favorable treatment. The more important the interest, the less tolerance is shown for differential treatment of people in similar circumstances and the more substantial must be the legislature's reasons for the difference in treatment.

In *United States v. Kras,* the Supreme Court apparently treated the right to a discharge in bankruptcy as an unimportant interest. 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). The court held that an indigent was not denied due process or equal protection by being required to pay a fee for commencing a bankruptcy case as a condition to obtaining a discharge. Four justices dissented. The decision may have been correct on the ground that the fee was a very small hindrance, since it could be paid in very small installments, but the majority opinion has been described as "the low-water mark of the twentieth century Supreme Court's battle against stigmatizing stereotypes of the poor." L. Tribe, American Constitutional Law § 16–19 at 1121 (1978).

The *Kras* decision does not mean that access to bankruptcy relief can be denied for any reason or for no reason. There still must be a "rational justification" for denying some persons bankruptcy relief provided to others in similar circumstances. *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973).

Excluding social security recipients from Chapter 13 relief would treat them differently from almost all other individuals with regular income, including those who rely for their support on other kinds of social welfare. Generally any individual with regular income is eligible for Chapter 13 relief. 11 U.S.C. §§ 101(24) & 109(e). Congress excluded stockbrokers, commodity brokers, and debtors who owe more than a certain amount of debts because it considered other bankruptcy procedures more appropriate. For stockbrokers and com-

modity brokers, there are special liquidation proceedings. 11 U.S.C. §§ 741–752 & 761–766. Debtors over the Chapter 13 debt limits can reorganize their financial affairs under Chapter 11. The exclusion from Chapter 13 does not mean that their only choice of bankruptcy proceedings is liquidation under Chapter 7.

Chapter 11 relief, however, will almost never be appropriate for debtors who rely on social security benefits. They will have no choice of bankruptcy proceedings. Only liquidation under chapter 7 will be available if they are excluded from Chapter 13.

The superiority of Chapter 13 relief to Chapter 7 relief is widely recognized. Chapter 13 allows a debtor the psychic satisfaction of paying his debts, rather than extinguishing them without payment under Chapter 7. The discharge under Chapter 13 is broader than the discharge under Chapter 7. 11 U.S.C. §§ 523(a) & 1328(a). A Chapter 7 discharge may leave the debtor with an insurmountable burden of nondischarged debts that could have been discharged in a Chapter 13 case. A discharge may be completely denied in a Chapter 7 case for several reasons that are not reasons for denial of a discharge under Chapter 13. 11 U.S.C. §§ 727, 1325 & 1328. The "cram-down" provisions of Chapter 13 provide a better method than Chapter 7 for a debtor to keep property subject to an unavoidable security interest. 11 U.S.C. § 1325(a)(5) & 506. The debtors in almost all these cases are using Chapter 13 for this purpose. In a Chapter 7 case the debtor must reaffirm the secured debt or redeem the property. Reaffirmation requires the creditor's agreement and may require the court's approval. 11 U.S.C. § 524(c), (d). Redemption requires the debtor to have enough cash to pay the creditor in one lump sum the value of the property or the amount of the debt, whichever is less. 11 U.S.C. §§ 506 & 722; *In re Bell*, 700 F.2d 1053, 10 B.C.D. 312, 8 C.B.C.2d 199 (6th Cir.1983). The advantages of Chapter 13 for a debtor are evident.

The availability of Chapter 7 relief and other non-bankruptcy procedures for relief from debts is not a reason for excluding social security recipients from Chapter 13 relief. The availability of other kinds of relief only reflects on the extent of the harm done by denying Chapter 13 relief. In the *Kras* decision, the majority of the Supreme Court thought that the existence of non-bankruptcy procedures for debt relief, no matter how unrealistic for a particular debtor, showed that an indigent debtor was not greatly harmed by being required to pay a filing fee as a condition to obtaining a discharge. 409 U.S. 434, 445–446, 93 S.Ct. 631, 638. This reasoning must be read in light of the court's belief that the filing fee was a very small obstacle to bankruptcy relief. The court also failed to note that bankruptcy is the only procedure by which a debtor can force extinguishment of his debts over his creditors' objections. A composition agreement requires the creditors' agreement. State laws cannot provide for the extinguishment of debts except by payment. U.S. Const. Art. I, § 10, cl. 1. This case also differs from *Kras* in that the filing fee was not a complete bar to relief to all indigents. The anti-assignment statute, however, completely excludes social security recipients from Chapter 13 relief.

There are two purported reasons for denying Chapter 13 relief to social security recipients. First is the original, primary purpose of the anti-assignment statute. It was meant to assure that social security recipients receive their benefits to pay for their subsistence despite the claims of their creditors. Chapter 13 does not conflict with this purpose. It serves a complementary purpose. Furthermore, the anti-assignment statute was not aimed at bankruptcy proceedings like Chapter 13, since no similar kind of proceeding existed when the anti-assignment statute was enacted. The original, primary purpose of the anti-assignment statute is not a rational justification for denying social security recipients the right to use their benefits in Chapter 13 cases.

The second purported reason for denying social security recipients the right to use their benefits in Chapter 13 cases is reduction of the administrative burden that in-

come deduction orders impose on the SSA. Obviously the SSA's duties will be reduced if it is not required to honor income deduction orders. The question is whether this reduction in the SSA's work justifies completely excluding social security recipients from Chapter 13 relief.

At the same time the SSA was contending that it couldn't bear the burden of complying with several hundred income deduction orders, it did not complain about the burden of honoring garnishment orders for alimony and child support. The handling of income deduction orders should be essentially the same as the handling of garnishment orders for alimony and child support. Income deduction orders might even be easier to handle. Other garnishment orders and state exemptions from garnishment can be ignored. The income deduction order also overrides other withholding obligations, except for taxes. Income deduction orders should be no more burdensome than additional garnishment orders for alimony and child support.

The several hundred income deduction orders could be the straw that broke the camel's back, but this contention is belied by the act that amended the anti-assignment statute and the legislative history of the act. The act was intended to make the social security system financially sound. Reducing the SSA's workload was not mentioned as a means of saving the system a significant amount of money. H.R.Rep. No. 98–25, 98th Cong., 1st Sess. 2 (1983). Freeing the SSA from income deduction orders was expected to have a negligible effect on the system's finances. Though the SSA's workload might be reduced as a result of benefit changes, the act also imposed a great amount of new work on the SSA. The act also provided for a study of whether the SSA should be made a separate agency, rather than continue as part of the Department of Health and Human Services. Pub.L. No. 98–21, § 338, 97 Stat. 132–133 (1983).

The SSA appears to have the resources and ability to comply with income deduction orders without overburdening itself. The minor administrative burden of compliance certainly does not justify complete exclusion of social security recipients from Chapter 13 relief. The anti-assignment statute was intended to protect social security recipients, not the SSA. It perverts the statute's purpose to read it as excluding social security recipients from Chapter 13 relief in order to protect the SSA from a minor administrative burden.

Furthermore, the court doubts the sincerity of the SSA's argument. The SSA has opposed income deduction orders in numerous cases. It has probably used enough money in these court battles to offset a large amount of the cost of simply complying with the orders. The incongruous legislative history of the amendment to the anti-assignment statute adds to the impression that the SSA's opposition is based on the desire to be free of any outside "interference", except what it consents to, without regard to whether Congress intended to allow the interference and without regard to whether the interference benefits social security recipients.

The administrative burden argument is weighted down by the justifiable suspicion that it is only a mask to hide the SSA's unworthy reasons for not wanting to comply with income deduction orders.

This case is similar to several kinds of cases, including cases like *United States v. Kras* involving access to the courts. *Kras* has already been adequately distinguished.

The SSA would no doubt like the court to treat this case like those in which the Supreme Court has upheld discriminatory welfare regulations partly on the ground that some beneficiaries can be required to sacrifice for the benefit of all potential beneficiaries in maintaining a workable system. *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); see also *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). The court's conclusions thus far show that this case does not fit the pattern.

This case is more like those in which the courts have struck down irrational classifications of welfare recipients. *Jiminez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 2497, 41 L.Ed.2d 363 (1974); *United States v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *United States v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). This case is also like *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). In that case the Supreme Court struck down a Kansas statute that provided for recovery of attorneys' fees from indigent criminal defendants who were provided counsel by the state but denied the defendants the exemptions provided to other debtors. The court said:

> We thus recognize that state recoupment statutes may betoken legitimate state interests. But these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors .... State recoupment laws ... need not blight in such discriminatory fashion the hopes of indigents for self-sufficiency and self-respect ....

407 U.S. 128, 141–142, 92 S.Ct. 2027, 2035, 32 L.Ed.2d 600.

Denying social security beneficiaries access to Chapter 13 relief is perhaps less harsh than the treatment of the debtors involved in *James v. Strange.* Denying Chapter 13 relief is, however, unnecessarily harsh treatment of social security recipients in order to relieve the SSA of the minor administrative burden imposed by income deduction orders.

The court concludes that the anti-assignment statute would deny social security recipients equal protection of the laws by excluding them from relief under Chapter 13. Accordingly, the anti-assignment statute cannot be applied to make these social security recipients ineligible for Chapter 13 relief or to protect the SSA from income deduction orders.

There remains the question of whether the anti-assignment statute is constitutional if it only prohibits income deduction orders to the SSA and does not make social security recipients completely ineligible for Chapter 13 relief. If the administrative burden argument were convincing and credible, it would probably satisfy the rational justification standard. Since the argument isn't, the court doesn't believe that it justifies treating social security recipients differently from other debtors who receive wages or other benefits from the federal government.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.