## In the Matter of Leona M. ROACH, Debtor.

### Bankruptcy No. GK 87–02655.

United States Bankruptcy Court,
W.D. Michigan.

Sept. 14, 1988.

Edward R. Barton, Allegan, Mich., for debtor.

Daniel M. LaVille, Asst. U.S. Atty., Grand Rapids, Mich., for Veterans' Admin.

Joseph A. Chrystler, Kalamazoo, Mich., Chapter 13 Trustee.

OPINION REGARDING BANKRUPTCY CODE PAYMENT ORDERS AND THE ANTI–ASSIGNMENT OF VETERANS' ADMINISTRATION BENEFITS

JAMES D. GREGG, Bankruptcy Judge.

### ISSUES

This case presents two interesting issues raised in connection with Bankruptcy Code payment orders and the anti-assignment of Veterans' Administration benefits.

The first issue the Court must address is whether there is a violation of Debtor's fifth amendment right to equal protection of the laws if the provision contained in 38 U.S.C. § 3101(a), regarding the anti-assignment of benefits administered by the Veterans' Administration, is found to prevent the entry of a payment order as provided by 11 U.S.C. § 1325(c).

The second issue is whether 11 U.S.C. § 1325(c), which authorizes a bankruptcy court to enter payment orders, impliedly repeals the provision regarding the anti-assignment of benefits administered by the Veterans' Administration imposed by 38 U.S.C. § 3101(a).

### FACTS

On September 1, 1987, Leona M. Roach (hereinafter "Debtor") filed her Original

Petition Under Chapter 13, Title 11 of the United States Code. 11 U.S.C. § 301; 11 U.S.C. §§ 1301–1330.[1] Joseph A. Chrystler (hereinafter "Trustee") was subsequently appointed by the court to serve as the trustee in connection with this case. On October 9, 1987, the court signed an Order to the Veterans Administration to Pay Benefits to the Trustee as Plan Payments (hereinafter "Payment Order") which directed the Veterans' Administration (hereinafter "V.A.") to forward to the Trustee the sum of $200.00 each month from the Debtor's benefits. This payment order was inadvertently entered by the court, at the request of Debtor's counsel, without giving the V.A. notice and an opportunity to be heard. 11 U.S.C. § 102(1). On November 2, 1987, the Debtor filed her Chapter 13 Plan. On February 8, 1988, the Debtor's Plan was confirmed and the court signed an Order Confirming Debtor's Plan, Awarding a Fee to Debtor's Attorney and Related Orders. On April 18, 1988, the Debtor filed a Motion to Hold the Veterans Administration in Contempt. On June 1, 1988, the V.A. filed an Answer to Motion to Hold the Veterans Administration in Contempt with a Brief in Support of Answer to Hold Veterans Administration in Contempt. On July 12, 1988 Debtor filed Debtor's Memorandum in Support of Motion to Require Veterans Administration to Honor Benefit Order. A Veterans Administration Reply Brief was filed on July 29, 1988. On August 16, 1988, Debtor filed a supplemental memorandum which first raised the issue of due process and equal protection. Finally, on September 1, 1988, the V.A. filed a response to the Debtor's supplemental memorandum. The Trustee has taken no formal position in this contested matter. All relevant pleadings and legal memoranda have been considered by the court in its deliberations respecting the issues presented.

## DISCUSSION AND CONCLUSION

The Debtor argues that 11 U.S.C. § 1325(c) authorizes the court to enforce its Payment Order. The Debtor further relies upon paragraph 9 of the Order Confirming the Plan which states "A copy of this Order can be served upon any subsequent employer or provider of benefits for the purposes of deducting the amounts ordered by the Court for payment to the Trustee in the amount of $400.00 per month."[2]

The V.A., in its answer, has requested that the court enter an order vacating the Payment Order alleging it is not legally obligated to pay funds to the Trustee. In support of its position, the V.A. asserts that (1) compliance with the Payment Order would entail a burdensome administrative procedure and (2) the anti-assignment of benefits provision, 38 U.S.C. § 3101(a), has not been repealed by 11 U.S.C. § 1325(c).

The court is cognizant that complying with a payment order may result in some additional time and expense but rejects the argument that compliance with a payment order is unduly burdensome.[3] Merely because a court order may be alleged to be onerous or burdensome does not give sufficient cause for an entity to ignore governing statutes, equitable considerations, or sound public policy.

The V.A. has also argued that 11 U.S.C. § 1325(c) does not allow the *prepetition* entry of payment orders. The court has preliminarily considered this issue in conjunction with its powers under 11 U.S.C. § 105. The court concludes a decision regarding the parameters of its Section 105 power is not necessary in this contested matter for reasons more fully set forth below.

---

**1.** Future references to 11 U.S.C. §§ 101–1330 herein shall be sometimes referred to as the "Bankruptcy Code" by reference to the applicable section thereof.

**2.** The court is now unable to reconcile the different amounts set forth in the Payment Order and plan confirmation order.

**3.** This judge is aware of two other payment order cases in this District in which the United States made a similar argument. Judge Laurence E. Howard in *In re Brown,* HK 87–01507 and Judge David E. Nims, Jr. in *In re Sampson,* NK 87–00752 have each also rejected the unduly burdensome argument in connection with the enforcement of payment orders against the V.A. and the United States Army.

The Debtor alleges that if the anti-assignment of benefits provision prevents the entry of a payment order, it violates her right to equal protection of the laws which is made applicable to the United States Government by the due process clause of the fifth amendment. The Debtor has also alleged that the right to file bankruptcy is a fundamental right guaranteed by the supremacy clause of the United States Constitution. This court need not decide whether the right to file bankruptcy is a fundamental right as the anti-assignment clause does not prevent the Debtor from filing for relief under Chapter 13.[4]

The Debtor has cited *In re Baxter*, 34 B.R. 911 (Bkrtcy.E.D.Tenn.1983) as support for her equal protection argument. *Baxter* held that the anti-assignment statute cannot be applied to make social security recipients ineligible for Chapter 13 relief. As to the issue regarding payment orders, the court in *Baxter* found that the administrative burden argument did not satisfy the rational justification standard.

In determining whether the anti-assignment of benefits provision denies the Debtor equal protection of the laws, the court must first decide the appropriate standard of review. A leading commentator has stated that equal protection involves a three-tier analysis; the strict scrutiny test, the intermediate review and the rational basis test. L. Tribe, *American Constitutional Law*, 1601–02 (2nd Ed.1988).

The strict scrutiny test is triggered when legislative or administrative choices burden fundamental rights or suggest prejudice against racial or other minorities. To uphold the legislative or administrative choice under the strict scrutiny test a compelling governmental interest or justification must be shown. *Id.* at 1451–54.

The intermediate review may be triggered by the infringement of "important" although not necessarily "fundamental" rights or interests. Intermediate review may also be triggered by the government's use of sensitive, although not necessarily suspect, criteria of classification, i.e., rules which discriminate against aliens, illegitimates, or are based on gender. Under the intermediate review, the objective of the legislation must be important but not compelling as required under the strict scrutiny test. *Id.* at 1602–18.

The rational basis test is used for equal protection analysis of economic and social legislation. Under the rational basis test there needs to be a rational or reasonable basis for the legislation. R. Chandler, R. Enslen and P. Renstrom, *Constitutional Law Deskbook: Individual Rights* (1987) states at page 383:

Legislative classifications are typically evaluated by the rationality test, which is a standard reflecting the Court's understanding that the drawing of lines that create distinctions is peculiarly a legislative task as well as an unavoidable one. Classifications are presumed to be valid under this approach and need not achieve perfection. If the legislative objective is legitimate, a classification may be used as long as it rationally relates to its objective. This doctrine places the burden of proof on the party claiming the legislation has no rational or reasonable basis.

The Supreme Court in *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980), *reh'g denied*, 450 U.S. 960, 101 S.Ct. 1421, 67 L.Ed.2d 385 (1981) states the appropriate standard of judicial review is the ration-

---

4. However, this court notes the Supreme Court has addressed this issue thusly:

Bankruptcy is hardly akin to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment, that the Court has come to regard as fundamental and that demand the lofty requirement of a compelling governmental interest before they may be significantly regulated. Neither does it touch upon what have been said to be the suspect criteria of race, nation-

ality, or alienage. Instead, bankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard, in measuring the propriety of Congress' classification, is that of rational justification.

There is no constitutional right to obtain a discharge of one's debts in bankruptcy.

*United States v. Kras*, 409 U.S. 434, 447, 93 S.Ct. 631, 639, 34 L.Ed.2d 626 (1973) (citations omitted).

al basis standard when social and economic legislation enacted by Congress, such as legislation relating to railroad benefits and social security benefits, is challenged as being violative of the fifth amendment to the United States Constitution. Therefore, this court holds the rational basis standard should also be used to examine the legislation regarding benefits administered by the V.A.

In *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 176, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980), the Court citing to *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) stated the following:

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369."

■ This court must decide whether there is a rational or reasonable basis for the anti-assignment of V.A. benefits provision contained in 38 U.S.C. § 3101(a), not whether in practice it results in some inequality. This court finds there is a rational basis for the anti-assignment clause. The main purpose of the anti-assignment language is rationally based as it assures that an individual will receive his or her benefits so as to be able to pay for the basic necessities of life. Even if the higher intermediate standard of review were used, this court finds the objective of the legislation is important enough so as not to violate the Debtor's right to equal protection. The Debtor has not met her burden of proving that the anti-assignment of benefits provision, 38 U.S.C. § 3101(a), has no rational or reasonable basis. The court therefore holds that the Debtor has not been denied equal protection of the laws under the fifth amendment.

The other question this court must resolve is the conflict between the provisions of two federal statutes—11 U.S.C. § 1325(c) and 38 U.S.C. § 3101(a).[5]

The anti-assignment provision respecting V.A. benefits is set forth in 38 U.S.C. § 3101(a). That subsection states:

> Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

The later enacted Bankruptcy Code provision authorizing the entry of payment orders, 11 U.S.C. § 1325(c), states: "After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee."

*Hildebrand v. Social Sec. Admin. (In re Buren),* 725 F.2d 1080 (6th Cir.1984), *cert. denied,* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed. 2d 34 (1984) decided a similar issue involving the conflict between the anti-assignment of social security benefits provision, 42 U.S.C. § 407, and the Bankruptcy Code provision allowing the entry of payment orders, 11 U.S.C. § 1325(c). The Sixth Circuit in *Buren* closely examined applicable legislative history and concluded that the anti-assignment provision in the Social Se-

---

**5.** In argument, the Debtor cites *In re Jenkins,* 58 B.R. 702 (Bkrtcy. W.D.Mich.1986) *aff'd sub nom. Michigan Employment Sec. Comm'n. v. Jenkins,* 64 B.R. 195 (W.D.Mich.1986) in which a Michigan statute precluding the assignment of unemployment benefits was held not to restrict the bankruptcy court's authority to issue payment orders under 11 U.S.C. § 1325. The court in *Jenkins* held, pursuant to *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) and the supremacy clause of the United States Constitution, art. VI, cl. 2, where a conflict exists between a state statute and a federal statute, the federal statute shall prevail. The *Jenkins* case involves the conflict between a state statute and a federal statute, not the issue before this court of two conflicting federal statutes.

curity Act had not been impliedly repealed by § 1325(c) of the Bankruptcy Code. *But see United States v. Devall,* 704 F.2d 1513 (11th Cir.1983). The Sixth Circuit, in reaching its conclusion in *Buren,* stated "The Supreme Court has held repeatedly that a 'cardinal rule' of statutory construction is that repeals by implication are disfavored." 725 F.2d at 1085. The Supreme Court in *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) also held that repeals by implication are disfavored. The Court stated: "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.... The intention of the legislature to repeal 'must be clear and manifest.'" *Id.* at 551–52, 94 S.Ct. at 2483–84.

The court in *Buren* also examined subsequent legislation in which a new subsection to the Social Security Act was added, 42 U.S.C. § 407(b), which states: "No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section." The *Buren* court also noted that "[w]hile the provision is effective on enactment and is not to be applied retroactively, Pub.L. 98–21, § 335(c), its language buttresses the court's conclusion in this case." 725 F.2d at 1087; *but see Mackey v. Lanier Collection Agency & Serv., Inc.,* — U.S. —, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.").

To determine if *Buren* controls the outcome of the instant contested matter, this court has carefully examined and compared the anti-assignment provisions set forth in 42 U.S.C. § 407(a) respecting social security benefits and 38 U.S.C. § 3101(a) respecting V.A. benefits.[6] The social security anti-assignment provision addressed in *Buren* is very similar in language and, in this court's judgment, identical in intent to the V.A. anti-assignment of benefits provision. The underlying purpose of the two statutory provisions is basically the same. The Social Security programs were established as a "welfare program for needy individuals who are aged, blind, or disabled.... if the benefits which would be provided under this program are to meet the most basic needs of the poor, the benefits must be protected from seizure in legal processes against the beneficiary." 725 F.2d at 1084. "Veterans' disability benefits compensate for impaired earning capacity and are intended to 'provide reasonable and adequate compensation for disabled veterans and their families'". *Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 2036, 95 L.Ed.2d 599 (1987) (citations omitted) (emphasis omitted); *Harewood v. Sarah Allen Home for the Aged, Inc. (In re Sarah Allen Home, Inc.),* 35 B.R. 362, 365 (Bkrtcy.E.D.Pa.1984) (the anti-assignment of benefits sections of the Social Security Act and the Veterans Benefit Act are substantially similar and such benefits would be immune from the reach of the bankruptcy laws) (dicta).

█ This court finds the anti-assignment provisions and the purpose of the statutes respecting Social Security benefits and V.A. benefits are nearly identical. The court therefore concludes that *Hildebrand v. Social Sec. Admin. (In re Buren),* 725 F.2d 1080 (6th Cir.1984), *cert. denied,* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984), controls the outcome of this contested matter.[7] This court holds that the anti-assign-

---

**6.** The Social Security Act, 42 U.S.C. § 407(a), states: "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

**7.** This court is aware of two other payment order cases within this district in which the *Buren* decision was not applied. In *In re Brown,* HK 87–01507, the *Buren* argument was never presented to Judge Laurence E. Howard and he therefore never addressed the issue. Based upon the record in that case, this judge believes that *Brown* was correctly decided. Judge David E. Nims, Jr. in *In re Sampson,* NK

ment of benefits provision in 38 U.S.C. § 3101(a) was not impliedly repealed by 11 U.S.C. § 1325(c).

This court believes that its previous payment order was erroneously entered and therefore that order is hereby set aside. As a result of this decision, the Debtor will not be prevented from carrying out her payment obligations to the Trustee in accordance with her confirmed Chapter 13 plan. Upon receiving her future V.A. benefit checks, the Debtor may use the benefits to voluntarily make her plan payments to the Trustee. *Buren* states: "As a practical matter, a willing debtor can simply sign his check over to the trustee." 725 F.2d at 1086; 11 U.S.C. § 1326(a)(1).

The Debtor brought this legal issue before the court pursuant to a Motion to Hold the Veterans Administration in Contempt. Based upon this decision, that motion is hereby denied. An order shall be entered accordingly.

87–00752, considered but declined to follow *Buren.* The *Sampson* case involved a payroll order respecting U.S. Army wages rather than benefits subject to a federal anti-assignment provision to protect needy, aged, infirm, or disabled individuals and their dependents. This judge therefore believes that the result in *Sampson* is supportable and is not inconsistent with this decision.