**In re Horace E. ADAMS, Debtor.**

**In re Gregory L. LAWTON, Debtor.**

**Bankruptcy Nos. 89–03388, 89–04334.**

United States Bankruptcy Court,
D. New Jersey.

June 6, 1990.

Jerome L. Merin, Asst. U.S. Atty., Newark, N.J., for U.S. Dept. of Navy.

Peter J. Broege, Wood, Broege & Fischer, Manasquan, N.J., for Standing Trustee.

## MEMORANDUM OPINION

**STEPHEN A. STRIPP**, Bankruptcy Judge.

These matters are before the Court on motions by the United States Department of the Navy ("the Navy") for modification of wage orders entered in these chapter 13 cases. Both wage orders directed the Navy as employer of the debtors to make payments from the debtors' wages to Robert M. Wood, the standing trustee ("the trustee"), and to the debtors' mortgagees. The Navy objects to making payments to the mortgagees. The motions are denied.

### I.

Gregory L. Lawton ("Lawton") filed a petition on May 3, 1989 for relief under chapter 13 of title 11, United States Code ("the Bankruptcy Code"), which is entitled "Adjustment of Debts of an Individual with Regular Income." Horace E. Adams ("Adams") filed a petition on June 5, 1989 for relief under chapter 13. Both debtors are civilian employees of the Navy.

Lawton was twelve months in arrears on his mortgage when he filed his bankruptcy petition. His plan called in pertinent part for payment of those arrears through the trustee over sixty months. In addition, mortgage payments becoming due after the petition was filed would be made "outside the plan;" i.e., the debtor rather than the trustee would be the disbursing agent as to such payments. A hearing on confirmation of the plan was conducted on July 25, 1989, and the plan was confirmed, with a requirement that a "wage order" would be entered directing the debtor's employer to pay the debtor's trustee and mortgagee directly from the debtor's wages. The order confirming the plan and the wage order were entered on August 17, 1989.

Adams was four months in arrears on his first mortgage and three months in arrears on his second mortgage when he filed his bankruptcy petition. His plan called in pertinent part for payment of those arrears through the trustee over forty-one months. In addition, postpetition mortgage payments would be made "outside the plan."

A hearing on confirmation was conducted on August 25, 1989, and the plan was confirmed with a requirement that a wage order would be entered as to the payments to the trustee and mortgagees.

On February 20, 1990 the Navy filed motions to modify the wage orders in these cases to terminate the requirement that the Navy pay the debtors' mortgagees. The debtors do not oppose the motions. The trustee does oppose them. Although these cases are otherwise unrelated, proceedings on these motions have been consolidated because the issues and arguments are identical.

These motions are core proceedings under 28 U.S.C. § 157(b)(2)(A), (E), (L) and (O).

### II.

The Navy does not dispute that it is obligated to make payments to the trustee pursuant to Bankruptcy Code § 1325(c), which provides that "[a]fter confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee." However, the Navy contends that its regulations do not allow payment pursuant to a chapter 13 wage order to anyone except the trustee, and that sovereign immunity prevents the Court from ordering such payments. The Navy complains that wage orders requiring payments to parties other than the trustee cause an administrative burden because the disbursing officer must issue a check manually to the mortgagee. The Navy also argues that even if there is a Court order directing it to do so, the disbursing officer would be personally liable because there is no authority to make such payments. The Navy adds that the debtors' needs can be met by directing payment to the trustee of the additional amounts needed to pay the postpetition mortgage installments, with the trustee then paying the mortgagee the amounts due both pre- and postpetition.

The trustee replies that the effect of such distribution by the trustee to mortgagees would be detrimental to the debtors because it would increase the debtors'

monthly mortgage payments by 10%, which is the measure of the trustee's commission on all payments which he receives and disburses. The trustee argues that the Code of Federal Regulations (CFR) and the Navy Comptroller Manual do not preclude the orders in question, and in any event the Court has authority to enter such orders.

### III.

Before addressing the parties' legal arguments, it is appropriate to provide the background which has given rise to this Court's imposition of wage orders in these and other cases.

Chapter 13 was enacted to provide an effective system for dealing with consumer bankruptcies, and to encourage debtors to attempt to pay their debts rather than discharging them in a liquidation under chapter 7. *In re Estus*, 695 F.2d 311 (8th Cir.1982). One of the principal advantages of chapter 13 over chapter 7 is that an individual can cure defaults on a mortgage in 13, but not in 7. *See* Code § 1322(b)(3) and (5), and *In re Roach*, 824 F.2d 1370 (3rd Cir.1987). Indeed, chapter 13 is virtually the only means available to a debtor/mortgagor to cure defaults on a mortgage over the objection of the mortgagee.[1] It has been this Court's experience that most chapter 13 cases are filed for that very reason.

The reasons why some individuals fall behind on their mortgage payments are, of course, varied. Regardless of the reasons, if a debtor does not keep up with both postpetition mortgage payments and payments to the trustee on the prepetition arrearages under the plan, the mortgagee obtains relief from the automatic stay, and/or the case is dismissed, and the residence is sold at a sheriff's foreclosure sale.

The confirmation of a chapter 13 plan is based in part upon a finding that the debtor will be able to make all payments to the trustee and any mortgagees. Code § 1325(a)(6). And yet, the success rate of confirmed plans in New Jersey has been poor. At the request of this Court, the trustee compiled statistics on the rate of completion of chapter 13 plans in this and several other states. By a letter dated February 6, 1989, which has been made part of the record on these motions, Peter J. Broege, Esq., attorney for the trustee, provided statistics for four districts for the twelve-month period ending September 30, 1988. Only 36% of confirmed chapter 13 plans were being successfully completed in New Jersey at that time. In the Northern District of Texas, the success rate was only 30%. At that time, both Mr. Broege's office and the office of the trustee for the Northern District of Texas had virtually no wage orders in effect. By contrast, the success rates of confirmed chapter 13 plans in the Western District of Wisconsin and the Middle District of North Carolina were 54% and 61% respectively. The trustees for those two districts had wage orders in 80% and 75% of their chapter 13 cases, respectively. To the same effect, *see also* Intrator, *Chapter 13 Study*, Norton Bankruptcy Law Adviser 1988, which has also been made part of the record in this case. The meaning of these statistics is clear: imposition of a wage order causes a striking increase in the likelihood that a confirmed chapter 13 plan will be completed.

As previously noted, a chapter 13 debtor must complete both payment to the trustee of prepetition arrearages *and* payment to the mortgagee of postpetition installments to complete the plan. It has been this Court's experience that the failure of confirmed chapter 13 plans is due to failure to make postpetition mortgage payments at least as often it is due to failure to make trustee payments. It is therefore far more beneficial to chapter 13 debtors and their creditors to impose wage orders for both trustee and mortgagee payments than it is to do so for trustee payments only.

From the employer's standpoint, it would undoubtedly be more convenient to prepare only one check, to the trustee, rather than another one or two to the mortgagees.

---

**1.** This relief can also be obtained in chapter 11, but it is more difficult and more expensive to do

so in 11 than it is in 13.

The problem with that from the debtor's standpoint is that the trustee is entitled to a "percentage fee" or commission on funds which he pays to creditors. Bankruptcy Code § 1326(b)(2). The Attorney General fixes the commission percentage. 28 U.S.C. § 586(e)(1)(B)(i). It has been fixed at 10%. Thus, as the trustee noted in his brief in opposition to these motions, if the trustee makes the postpetition mortgage payments, the amount of such payments will be increased by 10%. Such an increase is obviously not in the debtor's interests.

For all of the above reasons, this Court now imposes wage orders as to trustee and mortgagee payments upon confirmation of all chapter 13 plans, except in the small number of cases in which such orders are not feasible because of the nature of the debtor's employment (eg. self-employment, or frequent changes of employment through union-hall hiring), or legal prohibition (eg. Social Security payments, which cannot be subjected to wage orders).

In addition to the benefits of this practice for the debtors who retain their residences and the mortgagees who collect without foreclosure (as well as for the unsecured creditors who are paid under the plan), this practice has a significant incidental benefit on the Court as well. Thousands of chapter 13 cases are filed in New Jersey each year. Thousands of motions to dismiss and/or to vacate the automatic stay are filed annually in these cases as well. As the number of successful plans increases because of wage orders, the number of such motions decreases proportionately. Although this effect may not be a sufficient reason in itself to impose wage orders, it does enhance the desirability of the practice. In view of the fact that the Bankruptcy Court for the District of New Jersey is presently experiencing an increase in petitions filed of approximately 40% over 1989, added on to an increase in 1989 of approximately 25% over 1988, measures which have the incidental effect of freeing precious judicial time deserve proper consideration.

For all of these reasons, the case for imposing wage orders as to trustee and mortgagee payments where feasible is compelling. The District Court has recently approved of this practice. *In re King*, No. 89–4990, slip op. (D.N.J. April 3, 1990).

Against this background, the parties' legal arguments on these motions can now be addressed.

## IV.

The Navy's primary argument is that Code § 1325(c) only permits the Court to enter wage orders as to trustee payments. As previously noted, that section states that: "[a]fter confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee."

The Navy's argument cannot pass muster under *In re King, supra*, in which the District Court held that this Court's exclusive jurisdiction over a debtor's postpetition earnings authorized the imposition of wage orders as to trustee and mortgagee payments. Bankruptcy Code § 1306(a)(2) provides that a debtor's postpetition earnings are property of the estate. 28 U.S.C. § 1334(d) provides that the district court shall have exclusive jurisdiction over property of the estate. That jurisdiction has been referred to the Bankruptcy Court in New Jersey pursuant to 28 U.S.C. § 157(a).

Further, it has been held in other contexts that references in the Bankruptcy Code to the rights of a trustee do not limit the standing of other parties to act in lieu of a trustee. For example, Code § 506(c) provides that the trustee may recover the costs of preserving collateral from a secured creditor. In the case of *In re McKeesport Steel Castings Co.*, 799 F.2d 91 (3rd Cir.1986), the Court of Appeals for the Third Circuit noted that "[a] number of courts have held that parties other than the trustee have standing to recover under provisions stipulating that only the trustee may act." *Id.* at 93. The Court then held that because the creditor in *McKeesport* had a colorable claim under Code § 506(c), and was the only creditor who would zealously pursue it, the creditor had standing under 506(c), notwithstanding that that sec-

tion by its terms confers such standing only upon the trustee.

Thus, usage of the term "trustee" in the Bankruptcy Code does not necessarily mean that only the trustee has standing where the term is used. If the term "trustee" doesn't refer only to the trustee under Code §§ 506(c), 547 and others, then this Court fails to see why the term should be deemed to refer only to the trustee as used in Code § 1325(c). This Court finds that the circumstances set forth in section III above make a case for wage orders directing payments by employers to mortgagees which is at least as compelling as the circumstances presented in *McKeesport* and the cases which it cites which deviated from a strict reading of the statute. It should be borne in mind that in those cases, the courts had other remedies where the trustee failed to act for the creditor. For example, the courts could have ordered the trustee to act, or appointed substitute trustees. However, that would have added unnecessary expenses. The courts therefore chose to permit another party to act in lieu of the trustee because it was the most efficient, least expensive remedy under all of the circumstances. Similarly, the best remedy in these cases is to direct the Navy and other employers to pay the mortgagees directly. Code § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This Court finds that wage orders directing payment to mortgagees promote the debtor rehabilitation and creditor repayment purposes of chapter 13, and are therefore both necessary and appropriate within the meaning of Code § 105(a).

### V.

■ The Navy also argues, albeit virtually without citations, that Code § 1325(c) is a limited waiver of sovereign immunity for wage orders directing payment to trustees only.

Code § 1325(c) provides that the court may order "any entity" to pay the debtor's income to the trustee. Code § 106(c)(1) provides that "entity" applies to govern-mental units, and § 106(c)(2) provides that "a determination by the court of an issue arising under such a provision binds governmental units." The issue which is the subject of this opinion is "an issue arising under such a provision." Moreover, the concept of sovereign immunity is intended to insulate the federal and state governments from money judgments. "The language of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery." *Hoffman v. Connecticut Dep't. of Income Maint.*, — U.S. —, —, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76, 84 (1989). A wage order is in the nature of injunctive relief, not "monetary recovery" within the meaning of *Hoffman*. For these reasons, the Navy's argument that the subject wage orders violate sovereign immunity is without merit.

If the analysis in sections III and IV above demonstrates that wage orders can be directed to nongovernmental employers, there is no sufficient reason to exempt governmental employers from such orders. The ultimate reason for these motions is nothing more than that the Navy finds it inconvenient to provide an additional check or two to an employee/debtor's mortgagees. That reason is not based upon any uniquely governmental purpose or consideration. To the contrary, it puts the Navy squarely in the mainstream of employers who grumble from time to time that wage orders are a nuisance. Another court has summarized the answer to this argument rather well:

> The court is cognizant that complying with a payment order may result in some additional time and expense but rejects the argument that compliance with a payment order is unduly burdensome. Merely because a court order may be alleged to be onerous or burdensome does not give sufficient cause for an entity to ignore governing statutes, equitable considerations, or sound public policy. *In re Roach*, 90 B.R. 286, 287 (Bkrtcy.W.D.Mich.1988) (footnote omitted).

### VI.

The Navy acknowledges that pursuant to 32 C.F.R. § 89.4(a) and (b), civilian employ-

ees are entitled to request payroll allotments for various purposes. However, the Navy argues that such purposes do not include payment of a mortgage unless the employee is working for the Navy overseas. This argument must fail for the reasons stated in sections IV and V above.

### VII.

Lastly, the Navy also argued, without explanation or citation, that payment to the mortgagee under such an order would somehow impose personal liability on the disbursing officer. This Court hereby gives this argument the same attention which the Navy did, and rejects it summarily as without merit.

In conclusion, for the foregoing reasons, the motions are denied. The trustee shall submit appropriate orders under the five-day rule.